## THE CITY OF SAN ANTONIO.

(District Court, E. D. Virginia. February 23, 1905.)

1. SHIPPING—INJURIES TO LONGSHOREMAN—NEGLIGENCE—FELLOW SERVANTS.

Plaintiff, a longshoreman, was engaged in the hold of a barge, loading stone buckets, which, when loaded, were hoisted from the hold at a signal from a gangwayman by the operator of a steam winch. Libelant, with his partner, had loaded the bucket, and was in readiness to steady it so that it would clear the hatchway, and so informed the gangwayman, when the winchman negligently applied a full head of steam, suddenly snatching the bucket from its location upward against the starboard side of the hatch, where it hung under the coaming of the hatch, and then swung back to the port side, when the rope broke, and the bucket fell on libelant, causing his injuries. *Held*, that the injury was the result of the negligence of the winchman, who was not libelant's fellow servant.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 492.]

2. SAME—DAMAGES.

Libelant, a longshoreman, 56 years of age, of robust health, good character and habits, and an excellent workman, having been in the service of

his employers at the time of his injury for 10 years, and earning from $2 to $3 a day, was injured by the negligence of a barge winchman, resulting in a fracture of his thigh bone. He was confined to a hospital for two months, and at the time of the trial was still compelled to walk with crutches. He suffered considerable pain, and would not likely be able to follow his usual avocation. *Held,* that he was entitled to an allowance of $1,750 against the barge.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 359, 360.]

In Admiralty. Libel to recover damages for personal injury.

E. G. Irving and E. R. Baird, Jr., for libelant.

Martin A. Ryan and Theodorick A. Williams, for respondent.

WADDILL, District Judge. The libelant, Andrew Williams, a longshoreman, was employed by Dalby, Nottingham & Co., stevedores engaged in the removal of a cargo of crushed stone from the ocean-going barge City of San Antonio. The stevedores furnished the necessary longshoremen, consisting of four laborers, who worked in the hold of the barge, filling the buckets with stone, and a gangwayman, who stood on the upper deck of the barge to direct the movements of the same, as they were filled, by giving notice of such fact to the operator of the steam winch used in raising the stone. They also furnished the buckets, ropes, etc., for the service in hand. The barge furnished the steam winch or donkey engine with which to raise the stone, and the winchman to operate the same. On the morning of the 5th day of August, 1904, between 9 and 10 o'clock, while engaged in the removal of the cargo from the lower hold of the after hatch of the barge, and before the stone had been entirely moved from under the hatchways to the bottom of the barge, the libelant, by reason of one of the buckets loaded by him with stone catching under the coaming of the hatch, and one of the ropes giving way, sustained serious injury by the bucket falling upon him and breaking his left thigh bone.

The sole question to be determined is, whose negligence caused the rope to give way and the bucket to fall? In the evidence there is less conflict as to how the accident occurred than is usual in this class of cases. The libelant, two of the longshoremen, the gangwayman, and two of the stevedores all testify that the injury was the result solely of the negligence and inefficiency of the operator of the winch. After maturely considering all the evidence, the conclusion of the court is that the accident was brought about solely by the careless and negligent manner in which the winchman performed his duty, and without any fault or negligence on the part of the libelant. The barge at the time of the occurrence was fastened to one of the piers of the Norfolk & Western Railroad, at Lambert's Point, with her port side made fast to the pier and her bow to the stream. The libelant, along with a co-laborer, was working on the port or inside side of the hatch, filling the buckets, which carried some 1,200 pounds of stone, from that side; and two other longshoremen were engaged on the opposite, or outer, side of the hatchway, filling the buckets on that side. The libelant, with his partner, had loaded the bucket, from the fall of which he sustained

his injury, on the inward, or port, side of the vessel, and was in readiness to steady the same so that it would clear the hatchway of the vessel; and he informed the gangwayman of the fact, who, in turn, in the regular way, notified the winchman; and, instead of the latter putting on the steam gradually and cautiously, he applied a full head of steam, suddenly snatching the bucket from its location, upwards, and violently against the starboard side of the hatch, where it hung under the coaming of the hatch, swung back against the port side, when the rope by which it was suspended gave way, and the bucket fell upon the libelant, causing the injuries sued for.

Respondent does not claim that the winchman, the barge's representative, and the longshoreman injured, the employé of the stevedores, are fellow servants (The Lisnacrieve [D. C.] 78 Fed. 570; The Slingsby [D. C.] 116 Fed. 227; Id., 120 Fed. 749, 57 C. C. A. 52; The Gladestry, 124 Fed. 112; Id., 128 Fed. 591, 63 C. C. A. 198; The Elton [D. C.] 131 Fed. 562), but insists that the accident arose through the negligence of the gangwayman, who, it is contended, is a fellow servant of the longshoreman. Conceding that the latter proposition is true, it does not avail to relieve the respondent from liability in this case; since the evidence clearly establishes that the negligence of the winchman, the barge's representative, and not that of the gangwayman (if, indeed, the latter was guilty of negligence at all, which does not appear), brought about this accident.

It follows from what has been said that the libelant is entitled to recover in this action for the damages sustained by him, and the remaining question to be determined is the amount to be allowed, which in this as in all other cases is a difficult and delicate one, as such different and varied considerations enter therein. Libelant is 56 years of age, of robust health, good character, and good habits; an excellent workman, having been in the service of his then employers some 10 years, and earned from $2 to $3 per day. The injury sustained was a very serious one, from which he has not been able, and is not likely again to be able, to follow his usual avocation. He was in the hospital some two months, and suffered considerably, and still walks with the aid of crutches. From the whole facts it is believed that an allowance of $1,750 is reasonable, and a decree may be entered for that sum.