HOUSTON & T. C. R. CO. v. DIAMOND
PRESS BRICK CO. (No. 1614.)

(Court of Civil Appeals of Texas. Texarkana.
May 18, 1916. ·Rehearing Denied
June 15, 1916.)

INDEMNITY ⊘⟝9(1)—CONSTRUCTION—SCOPE OF
LIABILITY.

A contract by which defendant agreed to
pay all costs of spur track and release the railroad from liability, loss, or damage by fire,
whether caused by negligence of the road or not,
and "to save the road harmless from all claims
for damages growing out of construction, maintenance, or operation of the spur," and to reimburse the road for amounts paid by it for
such claims, did not render defendant liable for
loss. due to the railroad's negligence, except loss
by fire, so that the road, having paid a judgment for personal injuries on the spur, could
not recover from defendant, although the language of the contract was broad enough to cov-.
er such liability, but was inequitable and burdensome.

[Ed. Note.—For other cases, see Indemnity,
Cent. Dig. § 16; Dec. Dig. ⊘⟝9(1).]

Appeal from District Court, Ellis County;
F. L. Hawkins, Judge.

Action by the Houston & Texas Central
Railroad Company against the Diamond
Press Brick Company. Judgment for defendant, and plaintiff appeals. Affirmed.

April 5, 1910, appellant and appellee entered into a contract as follows:

"This agreement, made and entered into by
and between the Houston & Texas Central Railroad Company, hereinafter styled party of the
first part, and Diamond Press Brick Company,
a corporation having its principal office in the
city of Ferris, Ellis county, Texas, hereinafter
styled party of the second part, witnesseth:

"First. That the party of the first part agrees
and binds itself to furnish the rails and all material and labor, except that hereinafter stated,
for and to construct a spur track not exceeding
1,130 feet in length, in city of Ferris, Ellis
county, Texas. The said spur track to connect
with the main track of the party of the first
part and to extend in a southerly direction on
the east side thereof a distance of 1,130 feet
as represented by a red line on the blueprint
marked 'Exhibit A' hereto attached and made
a part hereof.

"Second. The party of the second part agrees
to procure the right of way for said spur track,
including any and all ordinances, and county
or municipal permits, without cost or expense
to the party of the first part. The title to said
right of way and the rights and permits so
granted to be vested in the party of the first
part, its successors or assigns.

"Third. The party of the second part agrees
to do the necessary grading, furnish the switch
and cross-ties, and also expressly agrees to reimburse the party of the first part for all
amounts expended by it for rail, labor, and other material used in constructing said track, but
it is understood that the material in said track,
when completed, shall be owned by the party of
the first part, together with the entire control
of same, and the party of the first part hereby
reserves the right, and is duly authorized whenever, or at any time, it should seem proper or
deem it necessary, for any reason whatever, and
without let or hindrance from said party of the
second part, to take up and remove the said spur
track and all material used in its construction,
and without being held liable to the party of
the second part for any damages resulting therefrom.

"Fourth. It is agreed and understood that the
said party of the second part shall bear the
expense of keeping the said spur track in good
condition, and that it will, upon receipt of bills
therefor, promptly reimburse the party of the
first part for any and all expenses incurred by
it for material and labor furnished in making
such repairs as may be necessary to keep the
said spur track in first-class condition.

"Fifth. It is further agreed and understood
that the party of the second part is to become
liable for cars placed or upon the above-described track for its use and benefit, whether such
cars are owned by the party of the first part or
other railroad companies, and in the event of
their damage or destruction by fire, or from any
other cause growing out of the making of this
agreement, the said party of the second part
shall pay all bills for such damage or destruction upon presentation thereof: Provided, that
where cars consigned to or intended for the use
of others than the party of the second part and
at its request are placed upon said spur track,
the party of the second part shall be responsible
for said cars the same as if they were consigned
to or placed on said spur track for its use and
benefit.

"Sixth. It is further agreed and understood
between the parties hereto that in consideration
of the convenient facilities · afforded, and the
benefits inuring to .the party of the second part
by the construction of said spur track, that the
party of the first part is hereby released from
all liability on account of any loss or damage
by fire to the property of the party of the second part, or to the property of any other person which may be in the care or control of the
party of the second part, in any car or cars upon said spur track, or in any building now or
hereafter erected adjacent to said spur track,
or property which may be staked or stored near
the same, whether such damage be occasioned
by sparks from locomotives, the negligence of
the agents or employés of the party of the first
part, or otherwise.

"Seventh. The party of the second part further agrees and obligates itself to save the party
of the first part harmless from any and all
claims for damages arising from any cause
whatever growing out of the construction, maintenance, and operation of said spur track, including damages for injury to or killing of stock
belonging to the party of the second part, its employés or tenants, whether such claim is made
by any person, firm, corporation, or municipality. The party of the second part further agrees
and binds itself to reimburse the said party of
the first part for any and all amounts it may be
compelled to pay in settlement of any claim for
which, under the terms of this agreement, the
party of the second part would be liable.

"Eighth. The right is given the party· of the
first part at any time to make use of said spur
track for the purpose of receiving and delivering
freight from and to other patrons, to spring
other spur tracks therefrom, or to extend the
same: Provided, such use of the spur track or
any extension thereof shall not unnecessarily
interfere with the said party of the second part
in the enjoyment of the benefits of said spur
track: Provided further, that the party of the
second part, in event of loss or damage to cars
and their contents, shall only be liable for those
which have been placed on said spur track, or
any extension thereof, for its use, and those
placed at its request as contemplated in article
fifth hereof.

"Ninth. In event the said spur track should be
extended or other track sprung therefrom the
party of the first part agrees to refund to the
party of the second part the proportionate
amount expended by the party of the second
part for right of way and material and labor
furnished by it on so much of the track as may

---

be used in common with others, such proportions to be on a basis of the number of industries served or benefited by the said spur track, and the expense of the repairs to said track shall be proportioned in the same manner."

It appears from the pleadings that the spur track constructed by appellant in accordance with its undertaking in the first paragraph of the contract crossed a public road. In January, 1913, one Hamilton sustained injury to his person, which he claimed was due to the negligent failure of appellant to keep the crossing over the road in proper condition. He sued appellant, and recovered judgment against it for $1,430, which it paid. Appellant then brought this suit against appellee to recover of it the $1,430 paid Hamilton, predicating liability as claimed against it on its undertaking in the seventh paragraph of the contract. Appellee excepted to the petition, on the ground: (1) That it appeared from the allegations therein that appellee was a corporation, and did not appear it was authorized to contract as charged; (2) that it appeared from said allegations that the injury to Hamilton was due to appellant's failure to properly maintain the spur track; and (3) if the contract should be construed as binding it to indemnify appellant against the consequences to third persons of its own negligence, that appellee was without power to so bind itself. Answering the petition, appellee set out the contract in full, and alleged, among other things, that it was incorporated under the laws of Texas "for the transaction of any manufacturing business, and the purchase and sale of goods, wares, and merchandise used for such business, and that as a matter of fact its business is and always has been the manufacture and sale of brick, and that as such corporation it was not authorized to enter into any such contract." In reply appellant admitted the contract to be as alleged by appellee, and that appellee was a corporation, and "was organized, among other things, for the manufacture of brick." Appellant then alleged that the spur track was useful and necessary to appellee's business as a manufacturer of brick, and therefore that it had a right to contract as it did, and further that appellee had enjoyed the use of the track for a long time, and was estopped from asserting that the contract under which it had use of same was ultra vires. The trial court was of opinion it appeared from the pleadings that appellant was not entitled to recover on the contract as it sought to, and, sustaining exceptions to the petition and a motion by appellee that "the uncontroverted facts alleged in its answers, original and supplemental, especially its allegations as to the contract between it and plaintiff, be taken as confessed," rendered judgment that appellant take nothing by its suit.

188 S.W.—3

Jno. T. Garrison, of Houston, and John H. Sharp, of Ennis, for appellant. G. C. Groce, of Waxahachie, for appellee.

WILLSON, C. J. (after stating the facts as above). It appeared from the pleadings that the recovery sought by appellant was of a sum it had to pay Hamilton because of its negligence resulting in injury to his person. The correctness of the court's ruling therefore may be said to depend upon the answers which should be made to these questions: (1) Did it appear that appellee undertook by the contract declared upon to bind itself to indemnify appellant against liability for personal injury to a third person due to appellant's own negligence? (2) If it did, then did it so bind itself, or was its undertaking ultra vires?

The contract should not be so construed "as to render it oppressive or inequitable as to either party, or so as to place one of the parties at the mercy of the other, unless it is clear that such was their manifest intention at the time the agreement was made." 2 Elliott on Contracts, § 1521. It is plain that, if the contract should be construed as binding appellee to indemnify appellant against the consequence of its own negligence, it would place appellee at the mercy of appellant, and easily could be made to operate oppressively and inequitably against it. Therefore it should not be held to have that effect, unless it is clear from its language that the parties, when they made it, intended it to operate that way. It will be noted that by the terms of the contract the spur track was to be constructed by appellant, but wholly at appellee's expense, and when constructed was to become and be appellant's property, and under its "entire control." Appellant was to determine when and how it should be repaired, and have such repairs made as were necessary to keep it in "first-class condition," but at appellee's expense. Appellant was to be released from all liability on account of loss by fire of property belonging to appellee or in its care or control, etc., whether such liability was due to negligence of its agents or employés, "or otherwise." Harsh and inequitable as the terms stated appear to be, it is manifest from the language used that the parties intended so to bind themselves. But that they intended by the seventh paragraph in the instrument to bind appellee to indemnify appellant against the consequences of its negligence resulting from other causes than fire is not at all manifest. On the contrary, the reasonable meaning of that paragraph, construed with the one preceding it, is that appellant was not to be liable for damages caused by fire due to its negligence, and was to be saved harmless from any and all other claims for damages against it not based on its negligence, "growing out of the construction, maintenance, and operation of said spur track." To construe it as

meaning that appellee was to indemnify appellant against liability to third persons for personal injuries to them resulting from its negligence in the construction, maintenance, and operation of the track, we think would be unreasonable. "Every presumption," said the court in Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 180, 27 Am. Rep. 28, "is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business, and hence the general rule is that contracts will not be so construed, unless expressed in unequivocal terms." There is no doubt the language of paragraph 7 is broad enough to bind appellee to indemnify appellant against the consequences of its own negligence, but it is not believed it should be construed as manifestly showing the intention of the parties to have been that it should so operate. "When general words," said the court in the case cited, "may operate without including the negligence of the carrier or his servants, it will not be presumed that it was intended to include it." And see Perry v. Payne, 217 Pa. 252, 66 Atl. 553, 11 L. R. A. (N. S.) 1173, 10 Ann. Cas. 589; Mitchell v. Railway Co., 124 Ky. 146, 74 S. W. 216; Railway Co. v. Cornell, 54 Hun, 292, 7 N. Y. Supp. 557; 6 R. C. L. 727; 5 Elliott on Contracts, § 4007; 22 Cyc. 85. If appellee could bind itself to do so, the words used in paragraph 7 of the contract undoubtedly operated to bind it to indemnify appellant against any liability it might incur in the construction, maintenance, and operation of the spur track not due to its negligence. Such, we think, should be held to have been the intention of the parties. Having reached this conclusion, it is not necessary to determine whether the contract was ultra vires as to appellee or not.

The judgment is affirmed.