591 A.2d 298

**TOPP COPY PRODUCTS INC. and Topp Telecommunications, Inc., Appellants,**

**v.**

**Ernest SINGLETARY and Tony Noviello t/a Nova Construction Co. and Nova Construction Inc.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1990.

Filed May 21, 1991.

460

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

Joseph D. Smith, Williamsport, for appellants.

Gary Weber, Williamsport, for appellees.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

BECK, Judge:

Appellant-tenant challenges the trial court's grant of summary judgment to appellee-landlord based upon an exculpatory clause included in the parties' commercial lease agreement. Tenant sued his landlord to recover for property damage caused by a water leak from the floor above the premises leased by tenant. On appeal tenant raises two issues: (1) whether the trial court erred in granting summary judgment to the landlord where the lease agreement and exculpatory clause were ambiguous; and (2) whether the trial court erred in not extending the law of the Commonwealth to recognize an implied warranty of habitability in a commercial lease.

After a complete review of the law relevant to the interpretation and application of exculpatory clauses, and after careful scrutiny of the clause and lease in question, we find the clause in this lease does not exculpate the landlord from liability based upon his own negligent conduct. Because we find the landlord is not immune from liability due to his alleged negligence, we need not address the tenant's second issue regarding the recognition of an implied warranty of habitability. We reverse the trial court's grant of summary

judgment to the landlord, and remand for further proceedings consistent with this opinion.

We initially note summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.Civ.P. 1035(b). On review of a trial court's grant of summary judgment, we must determine whether there exist any genuine issues of material fact. *Bobb v. Kraybill*, 354 Pa.Super. 361, 363, 511 A.2d 1379, 1380 (1986), *appeal denied*, 513 Pa. 633, 520 A.2d 1384 (1987). In our analysis of the issues presented,

> [w]e must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom.

*Ector v. Motorists Ins. Cos.*, 391 Pa.Super. 458, 463–64, 571 A.2d 457, 460 (1990), *appeal denied*, 525 Pa. 646, 581 A.2d 572 (1990). Although the evidence and all reasonable inferences are considered in a light most favorable to the appellant, the trial court's conclusions are given appropriate deference. Therefore, "we may reverse the trial court only where there has been an error of law, or a clear or manifest abuse of discretion." *Travaglia v. C.H. Schwertner & Son, Inc.*, 391 Pa.Super. 61, 64, 570 A.2d 513, 514 (1989) (citations omitted).

The facts of this case are as follows. The tenant, Topp Copy Products, Inc. and Topp Copy Telecommunications, Inc. (referred to herein as Topp Copy or tenant), is in the business of selling and leasing office equipment. Topp Copy entered into a commercial lease for the first floor of a multi-storied building. For all periods relevant to this case, the landlord, Singletary, was the owner of the building and

the landlord on the commercial lease.[1]   In an apartment located above the premises leased by Topp Copy, a toilet developed a leak, resulting in substantial water damage to the tenant's inventory stored in the leased unit.  The plumbing fixture that broke and caused the subsequent water damage to the tenant's inventory was not located in tenant's leased unit.

Topp Copy sued Singletary alleging breach of implied warranty of habitability for residential premises, breach of implied warranty of habitability for commercial premises, and negligence.[2]   Singletary filed a motion for summary judgment contending that an exculpatory clause in the parties' lease agreement barred tenant's suit for the water damage caused by the broken plumbing fixture.  The trial court granted Singletary's motion after determining the exculpatory clause controlled the parties' dispute.  Topp Copy now appeals to this court.

Topp Copy challenges the applicability of the exculpatory clause included in the lease agreement.   The clause,

[1].   The lease in question was originally entered into in 1981 between Topp Copy and Peter and Artemas Golamis.  The Golamises sold the building, in which Topp Copy was leasing the first floor, to appellee Singletary in 1985.  The trial court determined that the conveyance of the property from the Golamises to Singletary also assigned the lease in question to Singletary.  Trial Court Opinion, at 4 (citing *Howell v. Sewickley Township,* 352 Pa. 552, 43 A.2d 121 (1945)).  Appellant does not challenge on appeal the trial court's finding of a valid assignment of the lease agreement; therefore, that issue is considered abandoned and not before this court. *Upper Gwynedd Township Authority v. Roth,* 113 Pa.Commw. 239, 245 n. 9, 536 A.2d 875, 878 n. 9 (1988).

[2].   Appellant also filed a negligence claim against Tony Noviello, the sole proprietor of Nova Construction Company and Nova Construction, Inc. (Noviello).  Topp Copy alleges that Singletary hired Noviello to inspect and, if necessary, repair the plumbing in the apartments located on the second floor of the building in question.  Topp Copy contends that Noviello was negligent in the inspection and repair of the plumbing in the apartment located above Topp Copy's leased premises.

  Solely at issue in this appeal is the grant of summary judgment to appellant Singletary.  While Noviello joined in the appellate brief filed by Singletary, the lower court's order granted judgment only for Singletary.  Therefore, the negligence claim against Noviello is not at issue in this appeal and is not considered by this panel.

presented as paragraph 19 in the form commercial lease agreement, provides in full:

> And in consideration of securing the within lease at the above-stated rent, the Lessee [appellant Topp Copy] does hereby release and discharge said Lessor [appellee Singletary], his heirs or assigns, from any and all liability for damages that may result from the bursting, stoppage and leakage of any water pipe, gas pipe, sewer, basin, water-closet, steam pipe and drain, and from all liability for any and all damage caused by the water, gas, steam, waste and contents of said water pipes, gas pipes, steam pipes, sewers, basins, water-closets and drains.

Topp Copy argues that this exculpatory clause is not applicable to its damage because the clause does not explicitly state the landlord is relieved of liability for his own negligence and because the clause is ambiguous when read in context with another clause in the agreement. Specifically, Topp Copy asserts that the language of paragraph 15 of the lease makes the exculpation by paragraph 19 ambiguous.[3]

■ Our review of whether a contractual exculpatory clause is valid and enforceable involves a two part analysis. First we must inquire into whether the exculpatory clause in paragraph 19 is valid. Second, we consider whether the clause should be interpreted and construed to relieve a contracting party from liability for his own negligent conduct.

Our supreme court has held that an exculpatory clause is generally valid where three conditions are satisfied. *Princeton Sportswear Corp. v. H & M Assocs.*, 510 Pa. 189, 193, 507 A.2d 339, 341 (1986); *Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n*, 423 Pa. 288, 291–92, 224 A.2d 620, 622–23 (1966). The three conditions are that (1) the clause "does not contravene any policy of law, that is, ... it is not a matter of interest to the public

---

3. Paragraph 15 of the lease provides in pertinent part, "[a]ll damages or injuries done to the said premises other than those caused by fire and by ordinary wear and tear or by the acts or omission of the landlord shall be repaired by the Lessee herein." Reproduced Record, at 28a.

or State;" (2) the "contract is between persons relating entirely to their own private affairs;" and (3) "each party is a free bargaining agent ... [in that the agreement] is not in effect a mere contract of adhesion." *Employers Liability*, 423 Pa. at 291–92, 224 A.2d at 623; *see also Princeton Sportswear*, 510 Pa. at 193, 507 A.2d at 341; *Garbish v. Malvern Federal S. & L. Ass'n*, 358 Pa.Super. 282, 302, 517 A.2d 547, 557 (1986), *appeal denied*, 516 Pa. 641, 533 A.2d 712 (1987); *Richard's 5 & 10 v. Brooks Harvey Realty Investors*, 264 Pa.Super. 384, 386, 399 A.2d 1103, 1105 (1979).

If these conditions are met, and the clause is determined to be valid, the contract must still meet four additional standards in order to be "interpreted and construed to relieve a person of liability for his own ... acts of negligence." *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 434, 192 A.2d 682, 687 (1963). The four standards are that (1) the contract immunizing a party from liability for negligence must be construed strictly, "since they are not favorites of the law;" (2) the contract must state the intention of the parties "with the greatest particularity, ... beyond doubt by express stipulation, [and] no inference from words of general import can establish it;" (3) the contract must be construed against the party seeking immunity from liability; and (4) the burden of establishing the immunity is upon the party seeking protection of the clause. *Employers Liability*, 423 Pa. at 292–93, 224 A.2d at 623; *Garbish*, 358 Pa.Super. at 302, 517 A.2d at 557, *Richard's 5 & 10*, 264 Pa.Super. at 384, 399 A.2d at 1103.

These seven considerations demonstrate that contracts providing for the immunity of parties from their own negligent acts are not regarded positively under the law of the Commonwealth. Under Pennsylvania law, exculpation clauses included in lease agreements will be subjected to a detailed and thorough review to determine their validity and enforceability. *See, e.g., Employers Liability*, 423 Pa. at 290–92, 224 A.2d at 621–23; *Galligan v. Arovitch*, 421 Pa.

301, 303, 219 A.2d 463, 464 (1966); *Dilks,* 411 Pa. at 430–34, 192 A.2d at 685–87.

■ The reason the law looks with disfavor on exculpatory clauses is that they excuse defendants from maintaining reasonable standards of care. Restatement (Second) of Contracts § 195, comments a and b (1981); Annotation, *Validity of Exculpatory Clause in Lease Exempting Lessor from Liability,* 49 A.L.R.3d 321, 325 (1973). Under such clauses defendants may be negligent with impunity. Because generally the law seeks to discourage negligence and because generally the law requires that wrongdoers be liable for their wrongful acts, the validity and enforceability of exculpatory clauses are interpreted in a limiting fashion and the language is strictly construed against the clause's author.[4] *Galligan,* 421 Pa. at 303, 219 A.2d at 464; *Dilks,* 411 Pa. at 430, 192 A.2d at 685.

■ In the instant case the trial court concluded, and Topp Copy does not now contest, that the exculpatory clause in question is valid. Trial Court Opinion, at 6–7. We agree with the trial court that the exculpatory clause does satisfy the initial three conditions required for validity. This clause, included in a commercial lease entered into between a business tenant and an individual landlord, is not a matter of public or state interest; and is included in an agreement relating completely to the parties' private affairs. Moreover, Topp Copy does not contend that the commercial lease at issue is a contract of adhesion.

■ Although we find the instant exculpatory clause meets the initial three conditions for validity, that does not end our inquiry. Topp Copy specifically argues that the clause, although initially valid, is ambiguous and should not be interpreted or construed to immunize Singletary from his

4. We note that the commercial lease in the instant case is a form lease. Although a form lease is not "drafted" in accordance with the lessor's specific instructions, the lease is offered to the lessee-tenant as the lessor's language. A form lease agreement proposed by the lessor will thus be considered drafted by the lessor and construed against him.

own negligent acts. Relying on the latter four standards presented above, Topp Copy contends that the exculpatory clause uses words of general import, and is ambiguous when read in conjunction with paragraph 15 of the lease. According to Topp Copy, because the exculpatory clause does not meet the four standards of construction, it can not be given effect to immunize Singletary from liability for his own negligent conduct.

As noted above, paragraph 19 of the lease releases and discharges Topp Copy "from *any and all liability* for damages that may result from the bursting, stoppage and leakage of *any* water pipe, ... water closet, ... and from *all liability* for any and all damage caused by the water, ... and contents of said water pipes, ... [and] water closets." (Emphasis added). The trial court, relying on *Jacob Siegel Co. v. Philadelphia Record Co.*, 348 Pa. 245, 35 A.2d 408 (1944), held that the clause was not ambiguous, and thus, paragraph 19 dispositively determined the rights of the contracting parties. Trial Court Opinion, at 6. The trial court stated "it is above dispute that 'where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing.' ... This is such a case." *Id.* We disagree. We find that the trial court erred when as a matter of law it concluded paragraph 19 expressly stipulates the parties' intentions with respect to Singletary's immunity from liability due to his own negligent conduct.

As our supreme court has clearly noted in *Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n.*, a contract immunizing a party from liability for the damages caused by his own negligence must state such an intention "with the greatest particularity, ... beyond doubt by express stipulation, [and] no inference from words of general import can establish it." 423 Pa. at 292, 224 A.2d at 623; *see also Dilks*, 411 Pa. at 434, 192 A.2d at 687; *Perry v. Payne*, 217 Pa. 252, 262, 66 A. 553, 556 (1907). This rule for interpreting exculpatory clauses is well estab-

lished within the law of Pennsylvania, and has been consistently applied by the courts of this Commonwealth. *See, e.g., Kotwasinski v. Rasner,* 436 Pa. 32, 258 A.2d 865 (1969); *Employers Liability,* 423 Pa. 288, 224 A.2d 620 (1966); *Dilks,* 411 Pa. 425, 192 A.2d 682 (1963); *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907); *Richard's 5 & 10 v. Brooks Harvey Realty Investors,* 264 Pa.Super. 384, 399 A.2d 1103 (1979).

We particularly note that our supreme court recently reiterated the vitality of this interpretive rule in *Ruzzi v. Butler Petroleum Co.,* Pa., 588 A.2d 1 (1991). The court in *Ruzzi* considered an indemnity clause provided in a construction contract entered into between the owners of a gasoline service station and a petroleum company.[5] The contract covered the petroleum company's reconstruction of the service station for the owners. The indemnity clause provided that the property owners would

> exonerate, discharge, and agree to protect and save harmless and indemnify [the petroleum company] ... from *any and all liability* for claims for loss, damage, injury or other casualty to persons or property ... caused or occasioned by *any* leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises.

**5.** The supreme court has previously recognized and addressed the differences between an indemnity clause and an exculpatory clause. *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 192 A.2d 682. In *Dilks,* the court stated:

> [w]hile an exculpatory clause—which deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party—differs somewhat from an indemnity clause—which effects a change in the person who ultimately has to pay the damages—yet there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses, and vice versa.

411 Pa. at 435 n. 11, 192 A.2d at 687 n. 11. Therefore, under Pennsylvania law, cases analyzing indemnity clauses are relevant and applicable to matters involving exculpatory clauses.

*Ruzzi,* Pa., 588 A.2d at 3 (emphasis added). As a result of the petroleum company's negligence, an employee of an independent contractor hired by the petroleum company was injured while working on the property. The injured employee filed suit against the petroleum company and recovered an award at trial. In the same consolidated lawsuit, the petroleum company claimed that the property owner should be required, pursuant to the terms of the contract, to indemnify it for all damages incurred. Considering the indemnification claim, the trial court found for the property owners and against the petroleum company. *Id.,* 588 A.2d at 3. This court affirmed the trial court's decision.

On appeal to the supreme court, Justice Papadakos, writing for the majority succinctly stated that

> [t]he law has been well established in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification.

*Ruzzi,* Pa., 588 A.2d at 4 (citing *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907)). Because the rule of interpretation enunciated in *Perry v. Payne* was the law when the contract in *Ruzzi* was entered into, the court concluded it must assume that the contracting parties knew of that rule of law and "that the law would not recognize as effective their agreement concerning *negligent* acts ... unless an express stipulation concerning negligence was included in the document." *Id.,* 588 A.2d at 4 (emphasis in the original). Therefore, the court concluded, "the only intent that can be gleaned from this document is that the parties did not intend to indemnify for acts of the indemnitee's negligence, since words of general import are used." *Id.,* 588 A.2d at 5.

The contractual situation before us is similar to that in *Ruzzi.* The exculpatory clause at bar, paragraph 19,

releases and discharges Topp Copy "from *any and all liability* for damages that may result from the bursting, stoppage and leakage of any water." (Emphasis added). These are plainly words of general import. Moreover, as the supreme court held in *Ruzzi,* we must also conclude that, when they entered into their lease, Topp Copy and Singletary knew of and understand the interpretive rule of law from *Perry v. Payne.* We assume Topp Copy and Singletary understood that under Pennsylvania law, an exculpatory clause immunizing a landlord from liability for his own negligent acts would not be enforced unless negligence was expressly stipulated in the clause. Therefore, we must conclude, "that the parties did not intend to [exculpate Singletary] for acts of [Singletary's own] negligence." [6]

We find the trial court's reliance on *Jacob Siegel Co. v. Philadelphia Record Co.,* 348 Pa. 245, 35 A.2d 408, to be misplaced. In *Jacob Siegel,* our supreme court considered the enforceability of an exculpatory clause included in a commercial lease. However, unlike the clause considered at bar, the clause in *Jacob Siegel* specifically provided that the lessor was relieved of any liability for damages "caused by or result[ing] *from the negligence* of the Lessor." *Jacob*

---

**6.** We recognize that almost sixty years ago, our supreme court, in *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595 (1932), considered a fact pattern similar to the instant case, and an exculpatory clause *identical* to that at bar. The court held in *Cannon,* that the clause was valid and determinative of the parties' rights. The tenant in *Cannon* argued, similar to appellant at bar, that the water damage was caused by the landlord's negligence and the clause did not absolve the landlord "from liability for his acts of active negligence." *Id.,* 307 Pa. at 34, 160 A. at 596. The supreme court held the clause was dispositive of the dispute, stating

> [t]he terms are emphatic—the word 'all' needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts they would have so written the agreement. This paragraph of the lease is clear and unambiguous. No rules of construction are required to ascertain the intention of the parties.

*Cannon,* 307 Pa. at 34, 160 A. at 596. We find the supreme court's more recent reiteration and reliance on the *Perry v. Payne* interpretive rule of law to be dispositive of the issue at bar.

*Siegel*, 348 Pa. at 246, 35 A.2d at 408 (emphasis added). Therefore, the enforceability of the immunity in *Jacob Siegel* was in complete accord with *Perry v. Payne*, in that the clause expressly stipulated that the lessor was relieved of liability from his own negligent acts.

Because we find the instant exculpatory clause uses words of general import, and therefore, cannot be interpreted and construed to release and immunize Singletary from liability due to his own negligent conduct, we need not address Topp Copy's second issue arguing for the recognition of an implied warranty of habitability in commercial leases.[7] The trial court's grant of summary judgment for appellee Singletary is reversed and this action is remanded for further proceedings consistent with this opinion.

Reversed and remanded. Jurisdiction is relinquished.

---

7. Moreover, because we find the instant exculpatory clause cannot be given exculpatory effect, we do not decide whether paragraph 15, when read with paragraph 19, creates an ambiguity as to whether the landlord is relieved from liability for his own acts of negligence.